**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
Stephen A. Beck (*pro hac vice* forthcoming)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
E-mail: swestcot@bursor.com
sbeck@bursor.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

TAYLOR SMITH, individually and on behalf of all others similarly situated,

Plaintiff,

v.

YETI COOLERS, LLC,

Defendant.

Case No. 3:24-cv-01703-RFL

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Date: September 3, 2024
Time: 10:00 a.m.
Place: 15, 18th Floor
Judge: Hon. Rita F. Lin

# TABLE OF CONTENTS

PAGE(S)

INTRODUCTION .......... 1

LEGAL STANDARD .......... 1

ARGUMENT .......... 2

A. PLAINTIFF DID NOT CONSENT TO DEFENDANT'S PRACTICES .......... 2

B. PLAINTIFF SUFFICIENTLY ALLEGES HER SECTION 631 CLAIM .......... 4

1. Plaintiff Sufficiently Alleges That Adyen Violated The Second Prong Of Section 631(a) .......... 4

2. Plaintiff Sufficiently Alleges That Defendant Violated The Third Prong Of Section 631(a) .......... 5

3. "Abetting" Is Not An Element Of Section 631(a)(4) .......... 6

C. PLAINTIFF SUFFICIENTLY ALLEGES HER SECTION 632 CLAIM .......... 7

1. Plaintiff Sufficiently Alleges That Her Communications Are "Confidential" .......... 7

2. CIPA § 632 Provides For Defendant's Derivative Liability .......... 9

D. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY .......... 10

1. Plaintiff Had A Reasonable Expectation of Privacy .......... 10

2. Defendant Committed A Serious Breach of Privacy .......... 12

3. Defendant's Remaining Arguments Fail .......... 14

E. LEAVE TO AMEND SHOULD BE FREELY GIVEN .......... 15

CONCLUSION .......... 15

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*Allen v. Beverly Hills*,
911 F.2d 367 (9th Cir. 1990) ........ 15

*Allen v. Shutterfly, Inc.*,
2020 WL 5517172 (N.D. Cal. Sept. 14, 2020) ........ 2

*Armstrong v. Allied Ins. Co.*,
2014 WL 12591844 (C.D. Cal. Aug. 19, 2014) ........ 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 2

*Berman v. Freedom Finan. Network, LLC,*
30 F.4th 849 (9th Cir. 2022) ........ 2, 3

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 9

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........ 7, 8

*Cody v. Ring LLC*,
2024 WL 735667 (N.D. Cal. Feb. 22, 2024) ........ 4

*Cousin v. Sharp Healthcare*,
681 F.Supp.3d 1117 (S.D. Cal. 2023) ........ 6, 7

*Flanagan v. Flanagan*,
41 P. 3d 575 (Cal. 2002) ........ 8

*Foman v. Davis*,
371 U.S. 178 (1962) ........ 15

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ........ 5

*Humphrey v. J.M. Smucker Company*,
2023 WL 3592093 (N.D. Cal. May 22, 2023) ........ 2

*In re Cell Tower Litig.*,
2012 WL 1903883 (S.D. Cal. 2012) ........ 6

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ passim

*In re Facebook, Inc., Consumer Privacy User Profile Litigation*,
2019 WL 4261048 (N.D. Cal. Sept. 9, 2019) .......... 13

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 6

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) .......... 11

*In re Google Location Hist. Litig.*,
514 F. Supp. 3d (N.D. Cal. 2021) .......... 12

*In re Google, Inc. Privacy Policy Litigation*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 13

*In re iPhone Application Litigation*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 13

*In re Meta Pixel Tax Filing Cases*,
2024 WL 1251350 (N.D. Cal. Mar. 25, 2024) .......... 8

*In re Vizio, Inc. Consumer Privacy Litig.*,
238 F. Supp 3d 1204 (C.D. Cal. 2017) .......... 10

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) .......... 4

*Lieberman v. KCOP Television, Inc.*,
110 Cal.App.4th 156, 1 Cal.Rptr.3d 536 (2003) .......... 8

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) .......... 2, 15

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 13

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 13

*Moore v. Kayport Package Express, Inc.*,
885 F.2d 531 (9th Cir. 1989) .......... 15

*Nayab v. Capital One Bank (USA), N.A.*,
942 F.3d 480 (9th Cir. 2019) .......... 14

*Nguyen v. Barnes & Noble, Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......... 3

*Nw. Forest Res. Council v. Glickman*,
82 F.3d 825 (9th Cir. 1996) .......... 9

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ........ 2, 3

*Opperman v. Path, Inc.*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014) ........ 13

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. 2016) ........ 13

*Padron v. Lara*,
2018 WL 2213462 (E.D. Cal. May 11, 2018) ........ 11, 14

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........ 4, 7, 10, 13

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. 2019) ........ 13

*Rogers v. Ulrich*,
125 Cal. Rptr. 306 (Cal. Ct. App. 1975) ........ 5

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008) ........ 13

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. Sept. 27, 2021) ........ 4

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) ........ 12

*Smith v. Google, LLC*,
2024 WL 2808270 (N.D. Cal. June 3, 2024) ........ 8

*Somers v. Apple*,
729 F.3d 953 (9th Cir. 2013) ........ 2

*Swarts v. Home Depot, Inc.*,
689 F.Supp.3d 732 (N.D. Cal. 2023) ........ 9

*Thomas v. Papa Johns Int'l, Inc.*
2024 WL 2060140 (S.D. Cal. 2024) ........ 11

*Turner v. Nuance Commc'ns, Inc.*,
2024 WL 2750017 (N.D. Cal. May 28, 2024) ........ 8

*Vaccaro v. Altais*,
2023 WL 7003211 (C.D. Cal. 2023) ........ 9

*Valenzuela v. Keurig Green Mtn., Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) .......... 4

*Vera v. O'Keefe*,
791 F. Supp. 2d 959 (S.D. Cal. 2011) .......... 9

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......... 4, 5

**STATUTES**

Cal. Penal Code § 31 .......... 9

Cal. Penal Code § 631 .......... 4, 5, 7

Cal. Penal Code § 631(a) .......... 4, 5, 6, 7

Cal. Penal Code § 631(a)(4) .......... 6

**RULES**

Fed. R. Civ. P. 15(a)(1)(B) .......... 15

Fed. R. Civ. P. 15(a)(2) .......... 15

**INTRODUCTION**

California protects consumers by requiring private companies to disclose their data sharing practices when collecting sensitive, private information. Despite these requirements, Defendant YETI Coolers, LLC ("Defendant") fails to provide consumers with any notice regarding its data collection and sharing practices. Rather than facilitate its own transactions, Defendant outsources this service to a third party, Adyen. However, at no point are consumers aware that Adyen is collecting and monetizing their personal and financial information when completing a transaction on Defendant's website, www.yeti.com (the "Website"). That is by design. Defendant assists Adyen in intentionally mimicking its webpage to give the illusion that consumers are only communicating directly with Defendant. Moreover, rather than merely process the transaction, Adyen unlawfully collects and indefinitely stores consumer's personal and financial information in order to improve its fraud prevention services.

Plaintiff Taylor Smith ("Plaintiff") purchased a water bottle from Defendant's website in June 2023. *Id.*, ¶ 6. During her interactions on Defendant's Website, Plaintiff reasonably believed she was only communicating with Defendant, and that Defendant would not disclose her private information to third parties. *Id.* ¶ 7. Unbeknownst to Plaintiff, Defendant assisted Adyen in intercepting and indefinitely storing several pieces of private information from Plaintiff, including personally identifiable information and financial information. *Id.* Such disclosures violate California law.

Rather than correct its data sharing practices, Defendant now moves to dismiss the instant action, claiming that Plaintiff has failed to state any claim under California law. As a threshold matter, any arguments concerning Defendant's privacy policy are without merit. Such policies are only provided in the form of browsewrap agreements, which courts consistently find to be insufficient to provide consumers with constructive notice of their existence. Each of Defendant's remaining arguments are without merit, as discussed more thoroughly below.

**LEGAL STANDARD**

Under a Rule 12(b)(6) analysis, a motion to dismiss should be denied where the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Somers v. Apple*, 729 F.3d 953, 959 (9th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 960. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

"In deciding whether the plaintiff has stated a claim upon which relief has been granted, the court accepts her allegations as true and draws all reasonable inferences in her favor." *Humphrey v. J.M. Smucker Company*, 2023 WL 3592093, at *4 (N.D. Cal. May 22, 2023). Finally, "[i]f the court dismisses the complaint, it 'should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id.* (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

## <u>ARGUMENT</u>

### A. PLAINTIFF DID NOT CONSENT TO DEFENDANT'S PRACTICES

Defendant argues that Plaintiff assented to the terms of its data sharing practices because its "Privacy Policy was conspicuously posted on its website in multiple places[.]" Motion at 6. Notably, Defendant fails to provide the Court with sufficient facts describing the location of its privacy policy. That is intentional.

Defendant concedes, as it must, that California law requires constructive notice for consumers to be bound by contractual terms. *See id.* at 7 (citing *Allen v. Shutterfly, Inc.*, 2020 WL 5517172, at *6 (N.D. Cal. Sept. 14, 2020); *see also Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-13 (9th Cir. 2023) ("To form a contract under California…law, there must be actual or constructive notice of the agreement and the parties must manifest mutual assent."). For internet contracts, courts distinguish between "clickwrap" agreements and "browsewrap" agreements. Clickwrap agreements "present[] users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed." *Berman v. Freedom Finan. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). Conversely, browsewrap agreements "offer

terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website." *Id.* Courts consistently hold that browsewrap agreements are unenforceable because they fail to provide constructive notice to consumers. *Oberstein*, 60 F.4th at 513 ("Courts are generally reluctant to enforce [browsewrap] agreements because they often leave users unaware that contractual terms were even offered[.]"). As explained by the Ninth Circuit,

> [I]n keeping with courts' traditional reluctance to enforce browsewrap agreements against individual consumers, we therefore hold that where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, ***even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice***. …[T]he onus must be on website owners to put users on notice of the terms to which they wish to bind consumers.

*Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1178-79 (9th Cir. 2014).

Defendant contends that its privacy policy was located on its Website in two places: 1) on its home page, and 2) on a white pop-up banner on its home page. Motion at 7. However, even accepting that to be true, Defendant fails to establish how these locations provide consumers with constructive notice of their existence. They do not. As alleged by Plaintiff, "there is no privacy policy that alerts consumers that their sensitive information is being shared with and indefinitely stored by a third party." FAC, ¶ 37; *see also id.*, Figures 2-4. Defendant cannot claim that consumers assented to the terms of its practices when they were not provided constructive notice of them. *Nguyen*, 763 F.3d at 1178-79. Accordingly, the actual terms of Defendant's policies are wholly irrelevant to this Court's analysis because Defendant cannot establish that consumers, like Plaintiff, were provided with constructive notice of their existence. *Oberstein*, 60 F.4th at 513. In fact, such arguments are directly contradicted by Plaintiff's allegations. FAC, *e.g.*, ¶ 42 ("At no time are consumers informed nor do consumers consent to their sensitive information being disclosed and used in this manner.").

## B. PLAINTIFF SUFFICIENTLY ALLEGES HER SECTION 631 CLAIM

### 1. Plaintiff Sufficiently Alleges That Adyen Violated The Second Prong Of Section 631(a)[1]

Defendant argues that Plaintiff fails to allege that it violated the second prong of Section 631(a) because it is a party to the underlying communication. Motion at 8-9. That is wrong.

The second prong of Section 631(a) prohibits parties from:

> willfully and without consent of all parties to the communication, or in any unauthorized manner, reading, or attempting to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state.

Cal. Pen. Code § 631(a).

Accordingly, the second prong of Section 631 has three independent requirements: (1) lack of consent of all parties to a communication; (2) eavesdropping by a third-party nonparticipant; and (3) interception of a communication while in transit. *See, e.g.*, *Valenzuela v. Keurig Green Mtn., Inc.*, 674 F. Supp. 3d 751, 756–58 (N.D. Cal. 2023); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1081–84 (C.D. Cal. 2023). Section 631(a) shields parties to a communication from liability. *See, e.g.*, *Valenzuela*, 674 F. Supp. 3d at 757; *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606–07 (9th Cir. 2020); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 518 (C.D. Cal. Sept. 27, 2021). However, "a vendor hired by a website may act as a third-party eavesdropper if they secretly record conversations in real time." Cody v. Ring LLC, 2024 WL 735667, at *6 (N.D. Cal. Feb. 22, 2024). In determining the party status of a website vendor, California courts look to see if the "usage of third-party recordation software can be considered equivalent to having hired a third-party in the first place for purposes of a Section 631(a) analysis." *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022). Courts will pay particular attention to whether the accused eavesdropper intercepted communications for self-use or, comparatively, simply recorded communications for future playback on behalf of one of the parties. *Compare Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23,

[1] Plaintiff does not allege that Defendant (or Adyen) violated the first prong of Section 631(a).

2019) ("Facebook acquired user communications by causing their browsers to transmit parallel signals . . . that means of interception should not have stripped Facebook of its third-party status."), *with Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832–33 (N.D. Cal. 2021) ("[T]here are no allegations here that FullStory intercepted and used the data itself."). Finding of wrongdoing may require an examination into "whether or not the alleged third-party software provider aggregates or otherwise processes the recorded information, which might suggest that the software vendor independently uses the gathered data in some way." *Williams*, 2022 WL 17869275, at *3.

Here, Plaintiff sufficiently alleges that Adyen is more than a processing "tool" for Defendant. Plaintiff asserts that Adyen "monetizes this consumer information by incorporating it into its database and marketing its fraud prevention services (which utilize this data) to other merchants." FAC, ¶ 40. Such behavior is indicative of the impermissible self-serving behavior proscribed by California courts. *See, e.g.*, *Williams*, 2022 WL 17869275, at *3; *Graham*, 533 F. Supp. 3d at 832; *see also In re Facebook*, 956 F.3d at 608 ("Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule."). Adyen is more akin to an unseen auditor rather than a recipient of recordings. *Compare Ribas v. Clark*, P. 2d 637, 642 (Cal. 1985) ("[T]o permit a third person to furtively listen to a conversation . . . would clearly contravene the objectives of section 631."), *with Rogers v. Ulrich*, 125 Cal. Rptr. 306, 308-09 (Cal. Ct. App. 1975) (declining to find that the "statute covers the recording of a conversation made by a participant."). Plaintiff consented only to Defendant processing her information for the purposes of completing her transaction. Plaintiff did not consent to, nor was she aware that Defendant assisting an unknown third party in intercepting and indefinitely storing her confidential communications for purposes of monetizing that third-party's fraud prevention services.

### 2. **Plaintiff Sufficiently Alleges That Defendant Violated The Third Prong Of Section 631(a)**

Defendant states that "because the third clause of Section 631(a) governs the use of information obtained in violation of clauses one and two, Plaintiff does not and connect allege

YETI violated the third clause under Section 631(a) either." Motion at 9. However, Plaintiff sufficiently alleges that Adyen has violated the second prong of Section 631(a). As such, Plaintiff has satisfied the prerequisite for pleading a violation of the third prong of Section 631(a). *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) ("Plaintiff must establish that the information at issue . . . was obtained through a violation of the first or second clauses.").

### 3. "Abetting" Is Not An Element Of Section 631(a)(4)

Defendant argues that Plaintiff's Section 631(a)(4) claim fails because she "must show YETI agreed with, and specifically *intended* to help accomplish, Adyen having *improper* access to and use of Plaintiff's information[.]" Motion at 10. That is wrong.

Prong four of CIPA § 631(a) provides for liability when a person, "by means of any machine, instrument, contrivance, or in any other manner,…*aids, agrees with, employs, or conspires with* any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section." (emphasis added). Notably, missing from the plain statutory text is of Section 631(a)(4) is *any* reference to an "abetting" requirement. Had the legislature intended for "aids" to mean "aids and abets," it would have written the latter term instead of the former. *Cousin v. Sharp Healthcare*, 681 F.Supp.3d 1117, 1129-30 (S.D. Cal. 2023) ("Defendant's contention that 'aids' means 'aiding and abetting' ignores the 'agrees with, employs, or conspires with' language of the clause."); *In re Cell Tower Litig.*, 2012 WL 1903883, at *2 (S.D. Cal. 2012) ("The first step in analyzing a statute is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning.") (citations omitted).

The legislature's use of the terms "aids," "agrees with," and "employs" indicates that CIPA § 631(a) was mean to apply to a much broader swath of non-criminal conduct, regardless of "specific intent." *See Cousin*, 681 F.Supp.3d at 1129-30. To that end, "aid" should be interpreted as "to give assistance,"[2] "agrees with" as "to concur in opinion or purpose,"[3] and "employs" as "to make use of" or "to hire."[4] In short, a defendant violates prong four where it simply enables

[2] *Aid*, Merriam-Webster Dictionary. http://www.merriam-webster.com/dictionary/aid.
[3] *Agree*, Black's Law Dictionary (11th ed. 2019).
[4] *Employ*. Black's Law Dictionary (11th ed. 2019).

another's wrongdoing. *See Revitch*, 2019 WL 5485330, at *2 ("[T]he complaint adequately alleges that [defendant] violated section 631 by enabling [a third party's] wrongdoing.").

Here, the FAC is replete with allegations that Defendant intentionally enabled Adyen's wrongdoing. *See, e.g.,* FAC, ¶ 34 ("Defendant integrated Adyen's payment platform on its Website to process customer transactions and protect Defendant from fraudulent transactions."); *Id.*, ¶ 30 ("The risk management services also allow merchants to gain valuable insights into consumers' purchasing history by tracking and recording consumers' purchases across devices and networks."); *Id.*, ¶ 37 (Defendant fails to "alert[] consumers that their sensitive information is being shared with and indefinitely stored by a third party."); *Id.*, ¶ 39 ("Yeti assists Adyen in intercepting and indefinitely storing [private] information."); *Id.*, ¶ 41 ("Yeti is aware of the purpose for which Adyen collects consumers' sensitive and private information because Defendant is knowledgeable of and benefitting from Adyen's fraud prevention services."). These allegations are sufficient to plead Defendant's violation of prong four of CIPA § 631(a). *See Cousin*, 681 F.Supp.3d at 1129-30. This Court should decline to follow *Esparza*, and limit its analysis to the plain text of the statute.

## C. PLAINTIFF SUFFICIENTLY ALLEGES HER SECTION 632 CLAIM

### 1. <u>Plaintiff Sufficiently Alleges That Her Communications Are "Confidential"</u>

Defendant argues that Plaintiff cannot establish a claim under Section 632 because "it would make no sense" to find consumers' financial information to be "confidential as to preclude sharing with the merchant's payment processor." Motion at 10-11. Defendant makes this argument in reliance on its assertion that California courts have "developed a presumption" that Internet-based communications are not confidential within the meaning of Section 632. *Id.* That is wrong.

There is no presumption that internet-based communications are not confidential. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 938 (N.D. Cal. 2023) ("California courts have never recognized a legal 'presumption' that internet communications are not confidential under Section

632."); *Smith v. Google, LLC*, 2024 WL 2808270, at *6 (N.D. Cal. June 3, 2024) (same). To state a claim under Section 632, a plaintiff must demonstrate: (1) an electronic recording of (or eavesdropping on); (2) a "confidential communication;" and (3) that all parties did not consent. *Turner v. Nuance Commc'ns, Inc.*, 2024 WL 2750017, at *8 (N.D. Cal. May 28, 2024). A communication is confidential under Section 632 if a party "has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 41 P. 3d 575, 582 (Cal. 2002); *Brown*, 685 F. Supp. 3d at 939. As a threshold matter, whether a plaintiff had an objectively reasonable expectation that her confidential communications were not being recorded often presents factual issues not appropriately resolved at the pleading stage. *See Lieberman v. KCOP Television, Inc.*, 110 Cal.App.4th 156, 169, 1 Cal.Rptr.3d 536 (2003) ("It is for the jury to decide whether under the circumstances presented [plaintiff] could have *reasonably* expected that the communications were private."); *Brown*, 685 F. Supp. 3d at 937 (finding confidentiality under Section 632 to be "a fact-intensive inquiry" not appropriately resolved at summary judgment).

Here, Plaintiff possessed an objectively reasonable expectation that her communications were not being recorded. She was not confronted with a privacy policy when making a purchase on Defendant's Website, nor did she observe any identifying information alerting her that a third party would be involved in facilitating the transaction. FAC, ¶¶ 35-37. Companies cannot record and indefinitely maintain and monetize such sensitive information without the express consent of the party. *Brown*, 685 F. Supp. 3d at 938 ("In short, Section 632 protects against 'intentional, nonconsensual recording' of communications 'regardless of the content of the conversation' involved[.]"). Courts have found comparable data to satisfy the "confidential communications" requirement under Section 632. *See In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *7 (N.D. Cal. Mar. 25, 2024) (recognizing tax filing information as a "confidential communication"); *Smith v. Google*, 2024 WL 2808270, at *6 (N.D. Cal. June 3, 2024) (finding plaintiffs are not "alleging that their communications with another person were intercepted" and instead, they are alleging interception of their "sensitive financial information submitted to a tax preparation

website," which are "confidential communications"); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1074 (N.D. Cal. 2021) (holding data intercepted from a user's private browsing sessions constitutes "confidential communications"). The authority relied upon by Defendant is inapposite, as none of those cases concerned the surreptitious recording of sensitive financial information. *See, e.g., Swarts v. Home Depot, Inc.*, 689 F.Supp.3d 732, 747 (N.D. Cal. 2023) (finding internet communications with customer service agents not "confidential" under Section 632). As such, Plaintiff sufficiently states a claim under Section 632.

### 2. <u>CIPA § 632 Provides For Defendant's Derivative Liability</u>

Defendant argues that Plaintiff's § 632 claim fails because it "does not provide for the same derivative liability found in Section 631(a)(4). Motion at 12. That is wrong.

First, a party who aids and agrees with a violation of CIPA § 632 is also liable under the statute. *See Vera v. O'Keefe*, 791 F. Supp. 2d 959, 965 (S.D. Cal. 2011); *Vaccaro v. Altais*, 2023 WL 7003211, at *5 (C.D. Cal. 2023). Specifically, Cal. Penal Code § 31 allows for aiding and agreeing with liability. *See* Cal. Penal Code § 31 ("All persons concerned in the commission of a crime…or aid and abet in its commission…are principals in any crime so committed."). This section, when applied to CIPA § 632, "allows for [a defendant who aids and abets another] to be viewed as a principal whether or not she actually physically recorded the confidential conversation." *Vera*, 791 F. Supp. 2d at 965. "The plain language of the statute does not limit liability to the person who has physically recorded a confidential conversation." *Id.*[5]

Here, Plaintiff alleges that "[a]t all relevant times, Defendant aided, agreed with, and conspired with Adyen to track and intercept Plaintiff's and Class Members' internet communications while accessing www.yeti.com. These communications were intercepted without the authorization and consent of Plaintiff and Class Members." FAC, ¶ 55.[6] Additionally, "Defendant's Website does not include any identifying information…that alerts consumers that

[5] Defendant's lone authority is *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 834 (9th Cir. 1996). While this case addresses the doctrine of surplusage, it does not analyze the doctrine in the context of CIPA or in the context of an aiding and abetting theory of liability.

[6] These allegations are incorporated in Plaintiff's second cause of action under Section 632. FAC, ¶ 61.

their sensitive information is being shared with and indefinitely stored by a third party." *Id.*, ¶¶ 35-37. Nothing more is required.

Defendant's argument that Plaintiff's Section 632 claim fails for the same reasons as her Section 631(a)(4) claim is wrong, as discussed, *supra*. "Abetting" is not an element of Section 632. Therefore, a defendant violates Section 632 where it simply enables another's wrongdoing. *See Revitch*, 2019 WL 5485330, at *2. Plaintiff has alleged sufficient facts to satisfy her burden at the pleading stage. FAC, ¶¶ 34, 37, 39, 41.

**D. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY**

Defendant argues that Plaintiff fails to state a claim for invasion of privacy for three reasons: 1) "Plaintiff had no reasonable expectation of privacy," 2) Plaintiff fails to show that Defendant's "conduct amounted to a serious invasion of privacy," and 3) Plaintiff's "failure to allege any public sharing or any sharing of information other than to prevent fraud…precludes her constitutional claim." Motion at 13-15. Defendant is wrong on all counts.

To plead an invasion of privacy claim under the California Constitution, a plaintiff must allege "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest." *See* Motion at 17 (citing *Armstrong v. Allied Ins. Co.*, 2014 WL 12591844, at *5 (C.D. Cal. Aug. 19, 2014)). Given the similarity of intrusion upon seclusion claims to California invasion of privacy claims, the Ninth Circuit reframed the relevant inquiry as "whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook*, 956 F.3d at 601. Plaintiff has satisfied both requirements.

**1. <u>Plaintiff Had A Reasonable Expectation of Privacy</u>**

Defendant erroneously contends "consumers do not have a reasonable expectation of privacy over their commercial activity on the Internet." Motion at 13. Such a contention is at odds with California law.

"California has recognized. . .[an] interest[] in precluding the dissemination or misuse of sensitive and confidential information." *In re Vizio, Inc. Consumer Privacy Litig.*, 238 F. Supp 3d

1204, 1232 (C.D. Cal. 2017); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125 (3d Cir. 2015). This includes even basic personally identifiable information. *See Padron v. Lara*, 2018 WL 2213462, at *14 (E.D. Cal. May 11, 2018) ("California courts recognize a constitutionally protected interest in a person's name, address, and phone number.") (collecting cases). Courts also recognize "[i]ndividuals maintain the expectation that entities will not . . . collect such broad swaths of personal information absent consent." *Facebook*, 956 F.3d at 603 n.7.

Here, Plaintiff has alleged a reasonable expectation of privacy in the data Defendant assisted Adyen in intercepting. More specifically, Plaintiff alleges Adyen surreptitiously intercepted personally identifiable information, including at least her name, email address, home address, phone number, and zip code. FAC, ¶ 6. Additionally, when a customer checks out on Defendant's website, Adyen intercepts financial information, such as credit card numbers, the card issuer, expiration date, and CVC. *Id*. Consequently, Defendant assisted Adyen in collecting broad swaths of consumers sensitive and confidential information to build and monetize its fraud prevention database to sell to merchants. *Id*. ¶¶ 8, 40. Because consumers, including Plaintiff, did not consent to Adyen's interception, did not even know Adyen was involved in the data collection, and certainly did not know or consent to a third-party's monetization of the personal and financial data, the collection violates social norms. *Id.* ¶ 72. Courts have held this type of information to be subject to a reasonable expectation of privacy. *See Padron*, 2018 WL 2213462, at *14 (collecting cases).

Defendant relies primarily on *Thomas v. Papa Johns Int'l, Inc.* to support its contention that "consumers do not have a reasonable expectation of privacy" over the data shared with Adyen. Motion at 13. Such reliance is misguided. In *Thomas*, the alleged data collected merely included "mouse movements, clicks, keystrokes…URLs of webpages visited, and/or other electronic communications in real-time." 2024 WL 2060140, at *4 (S.D. Cal. 2024). The court determined "[t]he type of data collected here is…a far cry from the type of data that supports a finding of an expectation of privacy." *Id.* at *5. This is not analogous to the types of disclosures alleged here. Instead, Defendant assisted a third-party in obtaining detailed consumer information, including

"name[s]. email address[es], home address[es], phone number[s], zip code[s]…credit card number[s], card issuer, expiration date, and CVC[.]" FAC, ¶ 6. This practice "allow[s] merchants to gain valuable insights into consumers' purchasing history by tracking and recording consumers' purchases across devices and networks." *Id.*, ¶ 30. Adyen is able to monetize consumers' private information because it "allows Adyen to identify consumers across devices, networks, and identities and share this information with the merchants it partners with." *Id.*, ¶ 32. Courts in this District have already found these allegations support a claim for invasion of privacy under similar circumstances. *See Silver v. Stripe Inc.*, 2021 WL 3191752, at *6 (N.D. Cal. July 28, 2021) (denying defendant's motion to dismiss a California invasion of privacy claim because the plaintiffs alleged a reasonable expectation of privacy where defendant "compiled and disseminated plaintiffs' sensitive data").

Defendant's repeated attempts to mischaracterize Adyen as merely a payment processing provider is wholly unsupported and insufficient to serve as a basis to dismiss Plaintiff's claims. The surreptitious interceptions at issue go beyond the mere processing of payments, as Adyen indefinitely stores the information gathered and markets it to other merchants. FAC, ¶¶ 30, 32, 40. Moreover, Defendant's data sharing practices are not "fully disclosed" to consumers, as it contends. FAC, ¶¶ 7, 35-39, 42. Given the sensitive nature of the data collected and the deceitful way it was collected (i.e., via wiretapping), the collection intrudes on consumers' reasonable expectation of privacy, such that Plaintiff alleged sufficient facts necessary to survive a motion to dismiss. *In re Facebook*, 956 F.3d at 603; *Silver*, 2021 WL 3191752, at *6.

### 2. <u>Defendant Committed A Serious Breach of Privacy</u>

Defendant argues that Plaintiff cannot show that Defendant's "conduct amounted to a serious invasion of privacy." Motion at 14. As a threshold matter, Defendant's claim raises a question of fact that should not be resolved on the pleadings. Indeed, courts within this District recognize "whether a conduct was highly offensive cannot be resolved at the pleading stage." *Silver*, 2021 WL 3191752, at *5 (citations omitted); *In re Google Location Hist. Litig.*, 514 F. Supp. 3d at 1157–58 (N.D. Cal. 2021) (holding "[w]hether Google's collection and storage of

location data when Location History was set to off was highly offensive to a reasonable person is a question of fact."); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *83 (N.D. Cal. 2019) ("Nor is the offensiveness of Google's putative misconduct any less a matter of 'public policy,' or any more susceptible to 'resol[ution] at the pleading stage')(citation omitted); *In re Facebook, Inc., Consumer Privacy User Profile Litigation*, 2019 WL 4261048, at *17 (N.D. Cal. Sept. 9, 2019) ("Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is."); *see also Revitch*, 2019 WL 5485330, at *3 (denying motion to dismiss because whether conduct is offensive is a factual question).

At issue in the present action is how Defendant assisted Adyen in the "surreptitious" acquisition of personal and financial information. As Judge Tigar explained in *Opperman v. Path*, secretly acquiring an individual's personal information—as Defendant did here when it assisted Adyen with placing a wiretap on Plaintiff's and Class Members' communications—is far from "routine commercial behavior." 87 F. Supp. 3d 1018, 1061 (N.D. Cal. 2014) (concluding the offensiveness of the conduct in question was an issue of fact "best left for a jury"). In doing so, Judge Tigar also declined to follow *In re iPhone Application Litigation*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012), and *In re Google, Inc. Privacy Policy Litigation*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014), explaining the mechanical application of *Folgelstrom* was misplaced. *Compare Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1078 (N.D. Cal. 2016) (explaining "offensiveness inquiry is fact-specific, and this Court has already distinguished *Folgelstrom* because the data at issue here is "more private than a person's mailing address" and this kind of intrusion is not "routine commercial behavior."), *with Low v. LinkedIn Corp.,* 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (mechanically applying *Folgestrom* after the plaintiff failed to allege deanonymization of collected data); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127–28 (N.D. Cal. 2008) (finding there was no egregious breach because identity theft traced back to the theft of computers from a third party recruiter); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1140–42 (E.D. Cal. 2021) (mechanically applying *Folgestrom* because the plaintiff did "not allege [the defendants] used his information for any purpose at all). Similarly, other courts have determined that "[t]he question is

not necessarily whether [the plaintiff] maintained a reasonable expectation of privacy in the information in and of itself. Rather, . . . whether the data itself is sensitive and whether the manner it was collected . . . violates social norms." *In re Facebook*, 956 F.3d at 603.

Defendant's collection, recording, and monetization of consumers' protected personal and financial information, including their "name[s]. email address[es], home address[es], phone number[s], zip code[s]…credit card number[s], card issuer, expiration date, and CVC," extends far beyond any expectation of consumers. FAC, ¶ 6. Additionally, because Plaintiff alleged a surreptitious acquisition of information via a non-routine business practice (i.e. wiretapping), this Court should adopt the *Opperman* Court's reasoning. *Id.* ¶¶ 67-73.

### 3. **Defendant's Remaining Arguments Fail**

Defendant's remaining arguments fare no better. Defendant argues that Plaintiff's invasion of privacy claim fails because she does not allege that the information collected was "communicated to the public," and "outside the area of legitimate public concern." Motion at 15. Defendant is wrong on both counts.

First, Defendant's argument that Plaintiff's invasion of privacy claim requires "publicity" contradicts Ninth Circuit precedent. *See Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 491 (9th Cir. 2019) ("Intrusion upon seclusion does not depend upon any publicity given to the person whose interest is invaded or to his affairs. Rather, it consists solely of an intentional interference with his interest in solitude or seclusion, either to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man.") (citations omitted). Defendant invaded Plaintiff's privacy by disclosing her private personal and financial information to Adyen. FAC, ¶¶ 70-72. Nothing more is required.

Next, as a preliminary matter, any argument concerning the "public interest" in support of the disclosures at issue here raises an affirmative defense that is not appropriately resolved on a motion to dismiss. *Padron*, 2018 WL 2213462, at *8. More importantly, Defendant's argument mischaracterizes the nature of Adyen's risk management services. Far from a benevolent act, Defendant assisted Adyen in unlawfully collecting and indefinitely storing its customers' private

personal and financial information to protect itself from fraudulent transactions. FAC, ¶¶ 16, 27, 34, 40-42. Adyen monetizes this information, not for the public good, but for its own profit. *Id.*, ¶ 40. Consumers are unaware of and do not consent to this practice, which unnecessarily places their sensitive information at risk. *Id.*, ¶¶ 14-15.

**E. LEAVE TO AMEND SHOULD BE FREELY GIVEN**

Courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). As explained by the Supreme Court, "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The Ninth Circuit has found a failure to abide by this mandate to result in reversible error. *Lopez*, 203 F.3d at 1131. Despite this basic principle, Defendant argues that the Court should deny leave to amend, because doing so would be "futile." Motion at 15. However, beyond making a conclusory assertion, Defendant fails to cite any authority in support of its position. In both *Allen* and *Moore*, the court denied leave to amend for the filing of a *third* amended complaint. *See Allen v. Beverly Hills*, 911 F.2d 367, 373-74 (9th Cir. 1990); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 542 (9th Cir. 1989). Here, Plaintiff has only amended her complaint once, as of right. *See* Fed. R. Civ. P. 15(a)(1)(B). Unlike the plaintiffs in *Allen* or *Moore*, Plaintiff has not had the benefit of an order from the Court explaining any deficiencies in her pleadings. Accordingly, Defendant's argument is without merit.

**<u>CONCLUSION</u>**

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss in its entirety. Should the Court find dismissal of any claims warranted, Plaintiff seeks leave to amend the Complaint.

Dated: August 12, 2024

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: *<u>/s/ Sarah N. Westcot</u>*

Sarah N. Westcot (State Bar No. 264916)
Stephen A. Beck (*pro hac vice* forthcoming)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512

E-mail: swestcot@bursor.com
sbeck@bursor.com

*Counsel for Plaintiff*