**O'MELVENY & MYERS LLP**
RANDALL W. EDWARDS (S.B. #179053)
redwards@omm.com
MATTHEW D. POWERS (S.B. # 212682)
mpowers@omm.com
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

REBECCA A. GIROLAMO (S.B. #293422)
rgirolamo@omm.com
400 South Hope Street, Suite 1900
Los Angeles, California 90071
Telephone: +1 213 430 6000
Facsimile: +1 213 430 6407

Attorneys for Defendant
YETI Coolers, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

TAYLOR SMITH, individually and on behalf of all others similarly situated,

Plaintiff,

v.

YETI COOLERS, LLC,

Defendant.

Case No. 3:24-cv-01703-RFL

**YETI COOLERS, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

[*Filed concurrently with YETI Coolers, LLC's Reply in Support of Request for Judicial Notice*]

Date: September 3, 2024
Time: 10:00 AM
Courtroom: 15, 18th Floor
Judge: Hon. Rita F. Lin

## TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. YETI Fully Disclosed the Information Sharing At Issue. ..... 2

B. Plaintiff's Section 631 Claim Fails as a Matter of Law. ..... 3

1. Plaintiff Fails to Allege that YETI Violated the Second Prong of Section 631(a) Because YETI Is a Party to the Communication. ..... 3

2. Plaintiff Did Not Sufficiently Plead Facts Showing That YETI Agreed With, Conspired With, Aided, or Intended to Help Adyen Accomplish Any Purportedly Improper Access to Her Information. ..... 4

C. Plaintiff's Section 632 Claim Fails as a Matter of Law. ..... 5

1. The Communications at Issue Are Not Confidential Under Section 632. ..... 5

2. Section 632 Does Not Provide For Derivative Liability. ..... 7

D. Plaintiff Fails to State a Claim for Invasion of Privacy. ..... 8

III. CONCLUSION ..... 10

# I. INTRODUCTION

Plaintiff's Opposition does nothing to cure the First Amended Complaint ("FAC")'s many shortcomings identified in YETI's Motion to Dismiss. Instead, Plaintiff presents inaccurate statements of the law, ignores relevant case authorities, and misdescribes both judicially-noticeable facts and her own factual allegations. These misguided arguments cannot save her attempt to concoct privacy claims against YETI for allegedly sharing her payment-related information with its payment processor to process her payment to YETI, just as YETI had disclosed would occur. The Opposition's many flaws confirm the FAC's flaws are incurable.

YETI's Terms and Privacy Policy, which are judicially-noticeable documents and incorporated by reference in the FAC, directly contradict Plaintiff's conclusory assertion that no privacy policy exists disclosing the limited sharing at issue—a fundamental misstatement in the FAC that she never addresses. They defeat Plaintiff's Sections 631 and 632 claims under the California Invasion of Privacy Act ("CIPA") by providing constructive notice of the necessary sharing with YETI's processor. Plaintiff's other statutory arguments also fail. She misreads the law under Section 631(a), arguing that no specific intent by YETI is required to establish liability for aiding or conspiring with Adyen's supposed violations. And for her Section 632 claim, Plaintiff fails to rebut YETI's cases establishing that commercial Internet communications are presumptively not confidential, relying instead on a minority of factually distinct cases. Nor does she engage with the linguistic showing made by YETI that Section 632, unlike Section 631, does not permit derivative liability.

Finally, Plaintiff does not sufficiently plead a constitutional privacy claim despite her attempts to reframe the routine commercial transactions here as a "serious invasion of privacy" arising from the "surreptitious" transfer of her information by YETI. But nothing could be more "routine" than a payment processor handling payment for an online Internet purchase for which she voluntarily entered her payment information, and the use of that information to prevent future fraudulent transactions. In addition, she misstates the law in denying the independent flaw that no alleged widespread disclosure occurred.

Plaintiff's failure to correct these multiple, independent flaws warrants dismissal.

## II. ARGUMENT

### A. YETI Fully Disclosed the Information Sharing At Issue.

YETI's Terms and Privacy Policies disclose the information sharing challenged here, precluding Plaintiff's two CIPA claims. Mot. at 6-8.[1] Those documents expressly told her that the information she provided at payment checkout would be shared with third-party service providers (like Adyen). *See* Mot. at 7-8 (quoting disclosures regarding YETI's use of a third-party payment processing service, and collection and sharing of a website user's personal information).

YETI provides consumers like Plaintiff with constructive notice of its Terms and Privacy Policies by conspicuously posting them in multiple ways on the website, including with a link on a cookie banner that pops up on the home page. Mot. at 6-7. Plaintiff argues that YETI's well-placed website links to its Privacy Policy constitute "browsewrap" agreements because the links are insufficient and do not require an affirmative click to assent and, in her view, the Privacy Policy thus cannot be enforced. Opp. at 2-3. But browsewrap agreements are enforceable where, as here, a website "puts a reasonably prudent user on inquiry notice of the terms of the contract." *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1176-77 (9th Cir. 2014). "Inquiry notice" in this context may be determined by the design and content of the website and actions taken by the user that manifest assent. *See* Mot. at 7 (citing cases).

*Oberstein v. Live Nation Entertainment, Inc.*, 60 F.4th 505, 512-13 (9th Cir. 2023), cited in the Opposition, analyzes a different kind of "hybrid" clickwrap/browsewrap agreement where some affirmative actions were taken to further demonstrate consent, and it does not change this rule. There, the court affirmed the district court's finding that defendants' website provided "reasonably conspicuous notice" of the relevant Terms, in part, because of the design and content of the website on which "the [Terms are] conspicuously distinguished from the surrounding text in bright blue font, making its presence readily apparent." *Id.* at 516. As described in YETI's Motion, the Privacy Policy here is (1) hyperlinked on every single subpage, including the home page, of its website using white text on a dark blue background; and (2) presented to consumers

[1] Plaintiff's arguments opposing YETI's Request for Judicial Notice ("RJN") fail for the reasons set forth in YETI's concurrently-filed Reply ISO RJN.

on a bright white banner overlaying a full quarter of the homepage, notifies users that YETI's website uses tracking technologies, and provides a hyperlink to the Privacy Policy for further information in blue-underlined text. Mot at 7; RJN at 3. Under *Nguyen* and *Oberstein*, the design and content of YETI's disclosures put a reasonably prudent YETI website user on inquiry notice of the information practices now challenged. *See id.* And these details directly contradict both the FAC's simple denial that a privacy policy made any disclosure (FAC ¶ 37) and Plaintiff's argument that YETI "fails to provide the Court with sufficient facts describing the location of its privacy policy." Opp. at 2; *see also id.* at 3 (arguing, inconsistently, that YETI identifies two locations linking to the Privacy Policy).

Plaintiff fails to allege in the FAC, or even deny in the Opposition, that she never saw the hyperlinks at issue. In the Opposition, she concedes that she at least "consented" to YETI "processing her information for the purposes of completing her transaction." Opp. at 5. Her continued use of the website and subsequent purchase of a YETI product in the face of YETI's constructive notice comprise a series of affirmative actions manifesting assent. *See, e.g.*, FAC ¶ 6, Mot. at 6-7. As a result, the Opposition cannot save her CIPA claims for the reasons discussed above: the claim is barred where YETI provided constructive notice of its Terms and Privacy Policy to all consumers, including Plaintiff.

### B. <u>Plaintiff's Section 631 Claim Fails as a Matter of Law.</u>

#### 1. Plaintiff Fails to Allege that YETI Violated the Second Prong of Section 631(a) Because YETI Is a Party to the Communication.

Major flaws exist in the Opposition's attempt to justify claims against YETI for alleged violations of Section 631(a), Prongs 2 and 3, which bar unauthorized reading or use of contents of confidential communications while in transit over the Internet. At the threshold, the FAC contains no allegations that YETI itself engaged in interception of communications; the FAC alleges only that YETI is liable derivatively under Section 631(a), Prong 4. *E.g.*, FAC ¶¶ 55-56 (alleging YETI "aided, agreed with, and conspired with Adyen" and "aid[ed] and assist[ed] Adyen's" alleged wiretapping), 59 (alleging YETI "violated CIPA by aiding and permitting third parties to receive its customers' sensitive and confidential online communications…"). Moreover, Plaintiff

concedes, as she must, that "Section 631(a) shields parties to a communication from liability." Opp. at 4 (citing cases). Just so here: The FAC acknowledges YETI is a party to the communication, *see, e.g.*, FAC ¶¶ 6, 7, 33, 38, YETI accordingly cannot be liable under Section 631(a), Prongs 2 and 3. To avoid this party exception to liability under these prongs, Plaintiff argues at length that YETI can be liable because Adyen is a vendor hired by YETI that acts as a third-party eavesdropper. Opp. at 4-5. The argument is beside the point because Prongs 2 and 3 do not relate to her derivative liability theory based on conduct by Adyen.

#### 2. Plaintiff Did Not Sufficiently Plead Facts Showing That YETI Agreed With, Conspired With, Aided, or Intended to Help Adyen Accomplish Any Purportedly Improper Access to Her Information.

As to Plaintiff's claim that YETI is liable under Section 631, Prong 4, the Opposition ignores most of YETI's authorities confirming that the FAC fails to allege facts sufficient to show that YETI agreed with, conspired with, or aided Adyen's alleged wiretapping.

The correct standard for Prong 4 is set forth in YETI's Motion. Plaintiff must show that YETI and Facebook had an agreement and that YETI had "specific intent" for the commission of the unlawful acts at issue. *See* Mot. at 9 (citing multiple cases). Plaintiff argues for a lower standard and, in doing so, ignores all five authorities cited by YETI. She instead argues that Prong 4 is not narrowly limited to aiding and abetting liability, focusing on how Section 631 does not use the word "abet" (something YETI never argued). Opp. at 6-7. Under her view, Prong 4 applies to a "much broader swatch of non-criminal conduct, regardless of 'specific intent'" whenever a defendant "simply enables another's wrongdoing." Opp. at 6-7, 10. This is wrong. YETI cited three on-point cases decided in the last year that confirm the "specific intent" requirement applies to claims involving Section 631(a), Prong 4. *See* Mot. at 9. In *Rodriguez v. Ford Motor Co.*, 2024 WL 1223485, at *14-15 (S.D. Cal. Mar. 21, 2024), for example, the plaintiff alleged that the defendant violated Section 631(a), Prong 4 by embedding a third-party's chat software into its website and knowing that the third-party "capture[d] the electronic communications of visitors" to the website. The court dismissed that claim, holding that the plaintiff failed to sufficiently allege, as it must, that the defendant ***knew*** that the third party may have improperly used visitors' communications. *Id.*; *see also Esparza v. UAG Escondido A1 Inc.*,

2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024); *Heiting v. Taro Pharms. USA, Inc.*, 2023 WL 9319049, at *6 (C.D. Cal. Dec. 26, 2023).

Plaintiff points instead to *Cousin v. Sharp Healthcare,* 681 F. Supp. 3d 1117, 1129-30 (S.D. Cal. 2023), ostensibly to support her argument that Prong 4 should be applied without regard to "specific intent." Opp. at 6-7. Her reliance on *Cousin* is misplaced. In *Cousin*, the court ultimately ***granted*** the motion to dismiss, although not accepting the defendant's argument that Prong 4 is "essentially" an "aiding and abetting" provision where the defendant had "provide[d] no case law." *Id.* at 1129-30. But that reasoning does not apply here where YETI (1) did not argue that "abetting" was required and (2) provided multiple, recent authorities to show that Prong 4 claims require specific intent. Plaintiff's other citation, to *Revitch v. New Moosejaw, LLC,* 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) is even less helpful than *Cousin* because *Revitch* does not address, or even involve, a Section 631(a), Prong 4 claim. *See id.* Absent factual allegations of specific intent, Plaintiff cannot state a claim against YETI for violating Prong 4.

And Plaintiff's Opposition, like the FAC, does not close this gap. She argues that she has alleged specific intent by alleging that YETI knew that Adyen collects consumers' information to process transactions and prevent fraud, and failed to alert consumers about the information was shared (which is not even right, *supra* II.A.). Opp. at 7. As discussed above, the *Rodriguez* court dismissed the plaintiff's Prong 4 claim for lack of specific intent despite similar allegations. The FAC's factual allegations do not establish that YETI's knowledge of the intended use was equivalent to knowledge that Facebook's conduct would violate Section 631(a). Plaintiff's failure to state such facts precludes her claim under Prong 4.

### C. <u>Plaintiff's Section 632 Claim Fails as a Matter of Law.</u>

The Opposition also fails to overcome the other problems with Plaintiff's Section 632 claim. Her factual allegations show that her communications with YETI's website that Adyen allegedly eavesdropped were not "confidential" within the meaning of the statute, and Section 632's language does not provide for derivative liability.

#### 1. The Communications at Issue Are Not Confidential Under Section 632.

Plaintiff does not dispute YETI's showing that a communication is "confidential" under

Section 632 only where a party has "an objectively reasonable expectation that the conversation is not being overheard or recorded" based on the circumstances of the "actual conversation." *Rodriguez v. Google LLC*, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021) (citing *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776–77 (2002)).

Many federal courts in California apply a presumption that commercial Internet-based communications, like Plaintiff's, are not confidential. Mot. at 11 (citing cases). Plaintiff does not address any of those decisions in the Opposition—not even *Rodriguez* and *Revitch*, which she relies on for other arguments. She instead argues that two other cases, *Brown v. Google, LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) and *Smith v. Google, LLC*, 2024 WL 2808270, at *6 (N.D. Cal. June 3, 2024), reject the presumption. *Brown* acknowledges the presumption but chose not to follow it in a factually distinguishable case. The *Brown* court distinguished Google's collection of its users' information from its own search tool in "Incognito" mode (communications that were confidential because users indicated they were private) from non-confidential commercial communications over the Internet (like Plaintiff's here) that merely have the potential to be passed on to others. 685 F. Supp. 3d at 939. And *Smith* recognized other courts' use of the presumption but distinguished commercial information in those cases from the "sensitive" tax and financial information in *Smith*. 2024 WL 2808270, at *6. Plaintiff's factual allegations here more closely align with the facts of those cases recognizing that Internet communications are presumptively not confidential for Section 632 purposes: her product purchase is a commercial Internet communication—and one logically shared with the merchant's payment processor.

And regardless of any presumption, Plaintiff fails to allege facts that would establish she had any reasonable expectation of privacy in the communications at issue here. She argues that she "was not confronted with a privacy policy" and that her communications with YETI's website are "confidential" because they involve payment information. Opp. at 9. As discussed above, the former argument is simply wrong. *Supra* at II.A. And for the latter, she cannot persuasively equate basic credit card information that she voluntarily provided to make her online purchase with the "surreptitious recording" of tax filing information and other sensitive information submitted to a tax preparation website. *See* Opp. at 8-9 (citing *In re Meta Pixel Tax Filing Cases*,

2024 WL 1251350, at *7 (N.D. Cal. Mar. 25, 2024), which does not involve confidentiality under Section 632, and other similarly distinguishable cases). But, unlike the cases Plaintiff cites, YETI fully disclosed the "basic" information shared here when purchases are made by Plaintiff or any consumer on YETI's website, and that information further does not contain the many pieces of sensitive confidential information at issue in tax filings discussed in *In re Meta Pixel* and *Smith*. They are thus more like the Internet-based communications many courts have held are not subject to a reasonable expectation of privacy and thus not "confidential" for purposes of Section 632.

**2. Section 632 Does Not Provide For Derivative Liability.**

Plaintiff also does not present a persuasive argument for derivative liability under Section 632, given the statute's absence of any language permitting it (in striking contrast to Section 631). Plaintiff cites the two court decisions already acknowledged by YETI. *See Vaccaro v. Altais*, 2023 WL 7003211 (C.D. Cal. Oct. 23, 2023); *Vera v. O'Keefe*, 791 F. Supp. 2d 959 (S.D. Cal. 2011). But, as noted in YETI's Motion, neither of those cases address, let alone follow, the plain language of Section 632, which contains no derivative liability provision. And neither Plaintiff nor either of the cases she relies on address the specific linguistic differences between Section 631(a) and Section 632. Thus, neither is persuasive, let alone dispositive. Mot. at 12, n. 3. Section 631(a) expressly prohibits under Prong 4 anyone from "aid[ing], agree[ing] with, employ[ing], or conspire[ing] with any person or persons" to violate Section 631. In contrast, Section 632 has no language providing for derivative liability. Under the doctrine of avoiding surplusage, the grammatical reading where such language is absent from Section 632 but present in Section 631 is that Section 632 does not provide for the same aiding and abetting liability as Section 631(a). *See Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 834 (9th Cir. 1996), *as amended on denial of reh'g* (May 30, 1996). And an independently dispositive problem for Plaintiff is that her derivative liability allegations here are inadequate just as they are for the Section 631 claim.

Moreover, the court should reject Plaintiff's argument that derivative liability is ***not*** required because YETI is directly liable under Section 632 for "intentionally recording its conversations with clients involving confidential communications without their consent." Opp. at 12. Plaintiff does not even plead that theory, and it is contrary to factual allegations in the FAC,

which focuses on ***Adyen's*** alleged recording. FAC ¶¶ 61-66. Her new argument is wholly inconsistent with Plaintiff's factual allegations that she voluntarily submitted basic personal and credit card information to YETI (and thus must have wanted to communicate that information to YETI). FAC ¶ 6 *see also Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 99 (2006) (Section 632 claim involves recording of conversation without plaintiffs' knowledge or consent), *Gruber v. Yelp Inc.*, 55 Cal. App. 5th 591, 598 (2020) (similar). Any claim that YETI is directly liable for violating Section 632 thus fails as a matter of law.

**D. <u>Plaintiff Fails to State a Claim for Invasion of Privacy.</u>**

Plaintiff's efforts to save her constitutional invasion of privacy claim fail because her Opposition consistently ignores the case law defeating her position. Nor has Plaintiff alleged facts showing that the alleged invasion of privacy was "accompanied by publicity in the sense of communication to the public in general or to a large number of persons as distinguished from one individual or a few." *Kinsey v. Macur*, 107 Cal. App. 3d 265, 270 (1980). Plaintiff's failure to meet all three requirements bars her claim.

First, Plaintiff has not (and cannot) show that she has a reasonable expectation of privacy in the basic information she provided YETI during her purchase and that YETI allegedly shared with its payment processor. Plaintiff argues that California recognizes a reasonable expectation of privacy even in "basic personally identifiable information" and that to find otherwise would be "at odds with California law." Opp. at 10-11. But Plaintiff misdescribes the *Thomas v. Papa Johns* decision dismissing a similar claim. 2024 WL 2060140, at *5 (S.D. Cal. May 8, 2024). Plaintiff argues that *Thomas* is inapposite because the data at issue "merely included 'mouse movements, clicks, keystrokes…URLs of webpages visited, and/or other electronic communications in real-time.'" Opp. at 11-12. Not so: as quoted in YETI's motion, *Thomas* held that "name, address, credit card number(s), and billing information" entered on the defendant's website in connection with food purchases were "not information over which society is prepared to recognize a reasonable expectation of privacy." Mot. at 13 (quoting *Thomas*); *see also* Mot. at 13-14; *United States v. Forrester*, 512 F.3d 500, 509 (9th Cir. 2008) (One "has no legitimate expectation of privacy in information he voluntarily turns over to third parties.") (internal

quotation omitted). The cases Plaintiff cites are not analogous. *In re Vizio, Inc. Consumer Privacy Litig*., 238 F. Supp. 3d 1204, 1232 (C.D. Cal. 2017) (discussing privacy interest in video viewing histories); *In re Google Inc. Cookie Placement Consumer Priv. Litig*., 806 F.3d 125, 150-51 (3d Cir. 2015) (information obtained by overriding cookie blockers); *Padron v. Lara*, 2018 WL 2213462, at *1 (E.D. Cal. May 11, 2018) (discussing only non-electronic information disclosed publicly at city council); *Silver v. Stripe Inc*., 2021 WL 3191752, at *6 (N.D. Cal. 2021) (addressing claim where, unlike the express allegations here, disclosure "was for purposes unrelated to fraud or the business services in this case" and, unlike here, involved a comprehensive set of data). And Plaintiff's cursory assertion that she had a reasonable expectation of privacy also fails because judicially-noticeable documents and documents incorporated by reference show that YETI disclosed its information sharing practices. *Supra* II.A.

Second, Plaintiff cannot meet the "high bar" required to show a "serious invasion of privacy" that is an "egregious breach of social norms." *In re Yahoo Mail Litig*., 7 F. Supp. 3d 1016, 1037-38 (N.D. Cal. 2014) (citing *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 39-40 (1994)); *Hernandez v. Hillsides, Inc*., 47 Cal. 4th 272, 295 (2009). As discussed in YETI's motion, California courts find that "routine commercial behavior," including online purchases and fraud prevention, is simply not an "egregious breach of the social norms." Mot. at 14-15 (citing cases). Plaintiff argues that this issue "cannot be resolved at the pleading stage." Opp. at 13-14. Plaintiff cites *Silver* for this supposed categorical rule, but that case just cites *In re Facebook, Inc. Internet Tracking Litigation*, a Ninth Circuit decision that held that on the facts of that particular case, fact questions existed about comprehensive tracking practices off Facebook that even "the company's own officials recognized . . . as [] problematic." 956 F.3d 589, 606 (9th Cir. 2020). But many other cases do rule on the pleadings. *See, e.g., Thomas*, 2024 WL 2060140, at *6; *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *10-11 (S.D. Cal. Oct. 24, 2023); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1037-38. Plaintiff's authorities are, again, inapposite. She relies heavily on *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1061 (N.D. Cal. 2014, but that case was distinguished by *Thomas* and involved defendant's undisclosed "theft of information in [the plaintiffs'] personal contact lists." *See also, e.g., In re Facebook, Inc., Consumer Priv. User*

*Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019) (cited by Plaintiff, finding plaintiffs have adequately alleged an egregious invasion of their privacy when Facebook gave numerous app developers and businesses their sensitive information on a widespread basis).

*Thomas* is illustrative here as well: the court found, based on nearly the same basic information shared here, that there was no serious invasion of privacy despite the plaintiff's detailed allegations of various harms suffered. Mot. at 14 (citing *Thomas* and other cases). Plaintiff cites several cases elsewhere in the Opposition that further support the outcome in *Thomas. In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (dismissing plaintiffs' intrusion claims even where alleged disclosure of plaintiffs' information to third-party developers was contrary to defendant's own policies); *Low v. LinkedIn Corp*., 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (finding that "even disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms'") (collecting cases); *In re Vizio*, 238 F. Supp. 3d at 1233 (""Courts have been hesitant to extend the tort of invasion of privacy to the routine collection of personally identifiable information as part of electronic communications.").

Third, Plaintiff's claim fails for the additional, independent reason, that she does not allege that the information shared with Adyen was communicated "to the public in general or to a large number of persons…." *Kinsey,* 107 Cal. App. 3d at 270. Plaintiff wrongly claims that Ninth Circuit precedent "contradicts" that rule. Opp. at 14. This is flat wrong. She offers a quote from *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 491 (9th Cir. 2019), but *Nayab* is a Federal Credit Reporting Act case and addressed Article III standing. It did not involve a California constitutional privacy claim, nor did it cite any California law related to the quote Plaintiff proffers. *Kinsey*, which is regularly cited, dictates dismissal here because Plaintiff does not and cannot point to any factual allegations of alleged public sharing.

## III. <u>CONCLUSION</u>

The Court should grant YETI's Motion to Dismiss Plaintiff's First Amendment Complaint in its entirety and with prejudice.

Dated: August 19, 2024

O'MELVENY & MYERS LLP
By: /s/ Randall W. Edwards
Randall W. Edwards

*Attorney for Defendant YETI Coolers, LLC*